UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **HANOVER AMERICAN INSURANCE COMPANY** | |
| **Plaintiff,** | CIVIL ACTION NO. _____ |
| V. | JUDGE |
| **TATTOOED MILLIONAIRE ENTERTAINMENT, LLC, CHRISTOPHER C. BROWN, DANIEL R. MOTT, AND JOHN FALLS** | MAGISTRATE JUDGE |
| **Defendants.** | |

**COMPLAINT FOR DECLARATORY JUDGMENT
AND FOR RECOVERY OF INSURANCE CLAIM PAYMENTS AND DAMAGES**

Plaintiff, Hanover American Insurance Company files the instant Complaint for Declaratory Judgment and For Recovery of Insurance Claim Payments and Damages pursuant to 28 U.S.C. § 2201 and respectfully represents as follows:

I.

Plaintiff, Hanover American Insurance Company ("Hanover") is a New Hampshire corporation with its principal place of business in Worcester, Massachusetts.

II.

Made defendants herein are:

(a) Tattooed Millionaire Entertainment LLC (hereinafter "TME"), which is a Tennessee Corporation with its principal office located at 682 Rocky Field Cove, Cordova, Tennessee 38018.

(b) Christopher C. Brown ("Brown"), who is a Tennessee resident of the full age of majority who resides at 682 Rocky Field Cove, Cordova, Tennessee 38018.

1

    (c)    Daniel R. Mott ("Mott"), who is a Tennessee resident of the full age of majority who resides at 23 Duke Road, Humboldt, Tennessee 38343.

    (d)    John Falls ("Falls"), who is a Tennessee resident of the full age of majority who resides at 1665 Camille Way, Cordova, Tennessee 38018.

### III.

Jurisdiction exists in this Honorable Court pursuant to 28 U.S. C. § 1332 inasmuch as this matter involves a controversy between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

### IV.

Venue is proper inasmuch as the actions and conduct complained of occurred in Shelby County, Tennessee, which is within the Western District of Tennessee, Western Division.

## BACKGROUND

### V.

Defendant TME is a music production company which was formed in 2014 in connection with defendant Brown's purchase of the historic two-story House of Blues recording studio located at 898-904 Rayner Street in Memphis, Tennessee ("the Insured Premises"). Brown purchased the building for $150,000; the land on which the building is situated for $50,000; and miscellaneous equipment/movable property in the building for $50,000, for a total purchase price of $250,000. The effective date of the sale was November 25, 2014.

### VI.

Defendant Brown is the sole member, officer and owner of TME.

VII.

There were three recording studios located in the Insured Premises, and Brown/TME leased two of the studios. Defendant Falls leased a first-story studio known as studio B, while defendant Mott leased studio C on the second floor.

VIII.

According to the defendants, at all times material hereto, Brown owned over $10 million worth of musical equipment and music recording equipment (hereinafter collectively referred to as "recording equipment"), most of which he had acquired through several transactions. The details surrounding three of these transactions are more fully discussed below. According to defendants, at all times material hereto, the over $10 million of recording equipment owned by Brown was located at the Insured Premises, principally in the three studios.

IX.

Equipment lease agreements between the defendants required Mott and Falls to obtain property insurance coverage for the recording equipment owned by Brown which was located in their respective studios.

X.

On February 5, 2015, Brown completed a Commercial Insurance Application (the "Brown/TME application") on behalf of TME which his agent submitted to Hanover. Therein, Brown/TME applied for insurance coverage at the Insured Premises with limits as follows: Building Coverage - $4.65 million; Business Personal Property - $5.5 million; and Loss of Business Income - $600,000, for a total of $10.75 million in coverages. The Business Personal Property sought to be insured through the Brown/TME application consisted primarily of the recording equipment which the defendants claimed that Brown had acquired through the

aforementioned transactions, owned and which was located in the Insured Premises. Brown signed the application and attested "All values and location information are correct to the best of my knowledge."

XI.

Relying on the application submitted by Brown/TME, Hanover issued Policy ZZ5 A552202 00 to Brown/TME (hereinafter the "Brown/TME policy") with a term from February 6, 2015 to February 6, 2016 and with the insurance coverage limits requested in the Brown/TME application.

XII.

On April 10, 2015, Mott completed a Commercial Insurance Application (the "Mott application") which his agent submitted to Hanover. Therein, Mott applied for insurance coverage in connection with his lease of studio C and the recording equipment located therein with limits as follows: Business Personal Property – Leased $2.5 million; and Loss of Business Income $500,000, for a total of $3 million in coverages. Mott signed the application and attested that the values placed on the Business Personal Property were true and correct to the best of his knowledge.

XIII.

Relying on the application submitted by Mott, Hanover issued Policy ZZ5 A608619 00 to Mott (hereinafter the "Mott policy") with a term from April 10, 2015 to April 10, 2016 and with the insurance coverage limits requested in the Mott application.

XIV.

On April 9, 2015, Falls completed a Commercial Insurance Application (the "Falls application") which his agent submitted to Hanover. Therein, Falls applied for insurance

coverage in connection with his lease of studio B and the recording equipment located therein with limits as follows: Business Personal Property – Leased $2.5 million; and Loss of Business Income $500,000, for a total of $3 million in coverages. Falls signed the application and attested "All values and location information are correct to the best of my knowledge."

XV.

Relying on the application submitted by Falls, Hanover issued Policy ZZ5 A606514 00 to Falls (hereinafter the "Falls policy") with a term from April 9, 2015 to April 9, 2016 and with the insurance coverage limits requested in the Falls application.

XVI.

Both the Mott policy and the Falls policy listed TME/Brown as loss payee as respects the Business Personal Property which Mott and Falls leased from Brown at the Insured Premises. The total of the Business Personal Property coverage between the Brown/TME policy, the Mott policy, and the Falls policy was $10.5 million.

**INSURANCE CLAIMS**

XVII.

On November 5, 2015, an arson fire occurred at the Insured Premises causing extensive damage to both the building and certain Business Personal Property which was located in the building at the time of the fire. According to law enforcement and fire investigation officials, the fire was started by someone pouring gasoline on the first floor of the building and igniting it.

XVIII.

According to the defendants, Brown, Mott and Falls were all on vacation at the time of the arson fire, and the Insured Premises had been unoccupied since November 1, 2015.

XIX.

In the weeks which followed the November 5, 2015 arson fire, law enforcement and fire investigation officials advised Hanover that there was no evidence that any of the defendants were responsible for the arson fire.  Accordingly, Hanover asked the defendants to present their claims for damages caused by the arson fire so that Hanover could timely evaluate those claims and pay any and all amounts owed under the Brown/TME policy, the Mott policy and the Falls policy.

XX.

In connection with the defendants presenting their claims to Hanover, the defendants advised Hanover that they believed local street gang members to have been responsible for the arson fire and further, that upon entering the Insured premises following the fire, the defendants claimed they discovered that these gang members had removed and stolen most of the over $10 million in recording equipment before setting fire to the Insured premises.  Accordingly, each of the defendants made a demand upon Hanover to pay the full policy limits for Business Personal Property:  $5.5 million to Brown/TME and $2.5 million each to Mott and Falls, for a total of $10.5 million.

XXI.

The defendants have also made a demand upon Hanover to pay for damage to the building, to pay for other alleged covered losses, and to pay the full policy limits for Business Income loss:  $600,000 to Brown/TME and $500,000 each to Mott and Falls, for a total of $1.6 million in Business Income loss damages.

XXII.

As stated above, the defendants – both in their initial applications for insurance and their claims made following the arson fire, attested that over $10 million of recording equipment owned by Brown was located at the Insured Premises at all times material hereto. As proof of the existence of that recording equipment, the defendants submitted documentation purporting to show the following transactions made by Brown to acquire the recording equipment:

(a) Brown submitted bank documentation and an invoice (attached as Exhibit A) purporting to show that he wired $2,150,000 from his Bank of America account to a Wells Fargo account in order to purchase extensive recording equipment from the New York Liquidation Bureau on December 15, 2014. (the "New York Transaction").

(b) Brown submitted a VISA receipt and an invoice (attached as Exhibit B) purporting to show that he purchased $780,000 of recording equipment from Canada Liquidation Sales in St. Catharines, Ontario on July 16, 2014 (the "Canada Transaction").

(c) Brown submitted a VISA receipt and an invoice (Exhibit "C") purporting to show that he purchased $800,000 of recording studio equipment from the State of Oregon Surplus Property Program on September 30, 2013 (the "Oregon Transaction").

## HANOVER'S INVESTIGATION

XXIII.

Relying upon the documentation provided to Hanover in connection with their Business Personal Property claims, the defendants alleged that the three transactions described above resulted in Brown acquiring hundreds of pieces of recording equipment (see Exhibit A, B and C). Further, for each of the three transactions described above, the defendants claimed that because the recording equipment was obtained through two liquidation sales and a surplus property sale, the actual value of the recording equipment was far in excess of the amount Brown claims to

have paid for the recording equipment. Thus, the defendants demanded that Hanover pay the full Business Personal Property limit on each of the three policies.

XXIV.

As mentioned above, the arson fire at the Insured Premises resulted in damage to certain recording equipment which still remained in the Insured Premises after the fire (hereinafter "fire-damaged equipment"). However, upon conducting an inventory of the fire-damaged equipment during its investigation, Hanover was, surprisingly, unable to identify one single piece of equipment (out of the hundreds listed on the defendants' claim documents in Exhibits A, B, and C) that remained in the Insured premises after the fire. In other words, according to the defendants, the arsonist thieves dismantled and stole from the Insured Premises every single item that Brown acquired in the aforementioned three transactions.

XXV.

In an effort to confirm this remarkable coincidence and more specifically to confirm that the three transactions relied upon by the defendants to support their collective $10.5 million Business Personal Property claims actually occurred, Hanover contacted the New York Liquidation Bureau, The Canada Liquidation Sales Office, and the State of Oregon. Hanover asked each of these three entities to verify the financial and sales transactions reflected in Exhibits A, B and C. Their responses follow.

XXVI.

As respects the New York transaction wherein the defendants claim Brown wired $2.15 million to the New York Liquidation Bureau from his Bank Of America account to a Wells Fargo bank account to acquire millions of dollars of recording equipment reflected in the invoice

attached as Exhibit A, the response of the New York Liquidation Bureau (attached as Exhibit D) was, in part, as follows:

> **In response to your inquiry, please be advised that the invoice you provided indicating "Special Sale — 18965224", and dated 12/15/14, is not one used by the New York Liquidation Bureau. It was not issued or received by us. The New York Liquidation Bureau never received any such funds, and we have no record of any such transaction. We administer the rehabilitation and liquidation of insurance companies, and all our transactions identify the estate of the insolvent insurer. We note that the purported "customer copy" does not include any reference to an insolvent insurer. This form was not prepared or used in any way, shape, or form by the New York Liquidation Bureau.**

XXVII.

As respects the Canada transaction wherein the defendants claim Brown made a $780,000 VISA transaction to acquire millions of dollars of recording equipment reflected in the invoice attached as Exhibit B, the response of the Canada Liquidation Sales Office (attached as Exhibit E) was, in part, as follows:

> **I can confirm that we have never used credit cards in the 3.5 years I have been working for the company, and our invoice will show that as well. We only accept wire transfers and email transfers.**
>
> **We have never dealt with anyone in Tennessee …Canada Liquidation Sales buys and sells unwanted merchandise returns, and over stock items from major retailers such as department stores and online retailers. We buy by the truckload and sell by the skid and/or truck load. We do not sell pieced items, and definitely have never sold musical instruments in this capacity. I can confirm that we have certainly never had an invoice in that large of an amount. As our annual sales are generally around $1,000,000 annually.**

XXVIII.

As respects the Oregon transaction wherein the defendants claim Brown made an $800,000 VISA transaction to acquire millions of dollars of recording equipment reflected in the invoice attached as Exhibit C, the response of the State of Oregon (attached as Exhibit F) was as follows:

> **Regarding the invoice you emailed to me on the date specified above, I have researched this document, and have determined that this does not match any documents we would have ever issued. To confirm this, I had our cashier take a look, as well as our assistant manager, to verify inconsistencies I found in this document. I have attached to this document a redacted copy of a traditional invoice that purchasers would have historically received. While this document has morphed over the years, the basic configuration has remained the same. I then accessed our electronic records in two different databases (current, as well as one we used to employ and still have access to), and while we do have 2 local customers by that name, we can find no record of a transaction of the magnitude of the one you provided me. I researched many different variables, such as sale date, amount of sale and so on. All searches yielded no results. Speaking to that, I cannot remember a time in my 18+ years here that we have ever had a sale that large. The paperwork seems to suggest that this sale was of a very large lot of musical equipment. While this is definitely within the realm of items we sell, there is no evidence (invoice numbers, sale numbers, etc.), that would indicate that this is a sale we would have conducted. In conclusion, and to reiterate, the document you provided does not match any sale we have conducted in the past.**

XXIX.

Hanover has presented the responses received from The New York Liquidation Bureau, The Canada Liquidation Sales Office, and the State of Oregon to the defendants and has given the defendants an opportunity to rebut these responses and provide Hanover verified records or access to verified records of these purported transactions. As of the filing of this Complaint, the defendants have either refused or have been unable to do so.

XXX.

Based upon the responses received from The New York Liquidation Bureau, The Canada Liquidation Sales Office, and the State of Oregon, the only logical conclusion is: (i) these three purported transactions never occurred; (ii) the claim documentation submitted by defendants to support a collective $10.5 million Business Personal Property claim was fabricated and fraudulent; (iii) the defendants knew the recording equipment was never purchased and thus was never at the Insured Premises; and (iv) the defendants conspired from the beginning to submit false and misleading information in their insurance applications with the anticipation that they

would ultimately submit fraudulent insurance claims for the theft and/or loss of millions of dollars of Business Personal Property that the defendants knew never existed.

XXXI.

Brown/TME have also provided Hanover with hundreds of thousands of dollars of other alleged VISA transactions in connection with other aspects of the insurance claim for which Brown/TME have demanded payment. To date, Hanover has been unable to verify the validity of these transactions.

**INSURANCE POLICIES MAY BE RESCINDED AND ALL COVERAGES ARE VOID**

XXXII.

Hanover asserts that each of the defendants provided knowingly false and misleading information in each of their respective insurance applications with an intent to deceive in that they sought insurance coverage for millions of dollars of recording equipment that each of the defendants knew was never purchased and thus was never at the Insured Premises. Hanover is therefore entitled to rescission of the Brown/TME policy, the Mott policy and the Falls policy and for all other remedies and damages as may be allowed by law.

XXXIII.

The Brown/TME policy, the Mott policy and the Falls policy each contain the following language:

**COMMERCIAL PROPERTY CONDITIONS**

**This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.**

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

**This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:**

11

    1.    **This Coverage Part;**
    2.    **The Covered Property;**
    3.    **Your interest in the Covered Property; or**
    4.    **A claim under this Coverage Part.**

XXXIV.

Hanover asserts that based upon the responses received from The New York Liquidation Bureau, The Canada Liquidation Sales office, and the State of Oregon, and based upon other evidence to be put forth at trial, each of the defendants have committed one or more unlawful and/or fraudulent insurance acts within the meaning of TN Code Title 56 Chapter 53. The defendants have also intentionally misrepresented material facts concerning their insurance claims within the meaning of the Hanover policies. The three purported transactions never occurred; the claim documentation submitted by defendants to support a collective $10.5 million Business Personal Property claim was fabricated and fraudulent; and the defendants knew the recording equipment was never purchased and thus was never at the Insured Premises to be stolen. Accordingly, all coverages provided by the Brown/TME policy, the Mott policy and the Falls policy are void, and Hanover is not obligated to make any payments associated with the theft/fire claim of November 5, 2015.

XXXV.

Prior to discovering that the defendants' insurance applications were based upon false and misleading information and that the defendants' Business Personal Property insurance claims were fabricated and fraudulent, Hanover made the following payments:

    Brown/TME -    Building payment:$1,208,898.49
                             Business Personal Property/General advance $1,096,265.68
    Mott            General advance $250,000.00
    Falls             General advance $250,000.00

XXXVI.

Because of the defendants' knowingly false misrepresentations in their applications as well as their fabricated and fraudulent insurance claims, defendants were entitled to no payments under any of the Hanover insurance policies. The aforementioned payments made by Hanover were wrongfully induced by the defendants' collective fraudulent conduct, and Hanover is entitled to full recovery of all insurance payments made to date.

XXXVII.

In connection with the knowingly false and misleading applications submitted by each of the defendants, the subsequent arson fire and alleged theft, and the fraudulent claims presented by defendants, Hanover has sustained damages in the form of investigation expenses, consultant fees, incidental claim expenses, insurance claim payments, attorneys' fees, court costs, and other damages to be shown at trial.

**PRAYER FOR DECLARATORY JUDGMENT AND RELIEF**

WHEREFORE, Hanover American Insurance Company prays for Declaratory Judgment as follows:

(a) Christopher C. Brown, individually and on behalf of Tattooed Millionaire Entertainment, LLC, provided knowingly false and misleading information in the Brown/TME Application with an intent to deceive in that he induced Hanover to provide insurance coverage for millions of dollars of Business personal property that Brown/TME knew was never purchased and thus was never at the Insured Premises. Accordingly, Hanover is entitled to the remedy of rescission of the Brown/TME policy.

(b) Daniel R. Mott provided knowingly false and misleading information in the Mott application with an intent to deceive in that he induced Hanover to provide insurance coverage for millions of dollars of recording equipment that he knew was never purchased and thus was

never at the Insured Premises. Accordingly, Hanover is entitled to the remedy of rescission of the Mott policy.

(c) John Falls provided knowingly false and misleading information in the Falls application with an intent to deceive in that he induced Hanover to provide insurance coverage for millions of dollars of recording equipment that he knew was never purchased and thus was never at the Insured Premises. Accordingly, Hanover is entitled to the remedy of rescission of the Falls policy.

(d) Christopher C. Brown, individually and on behalf of Tattooed Millionaire Entertainment, LLC, Daniel R. Mott, and John Falls each committed one or more unlawful and/or fraudulent insurance acts within the meaning to TN Code Title 56 Chapter 53. The defendants have also intentionally misrepresented material facts concerning their insurance claims within the meaning of the Hanover policies. The three purported financial transactions never occurred; the claim documentation submitted by defendants to support a collective $10.5 million Business Personal Property claim was fabricated and fraudulent; and the defendants knew the recording equipment was never purchased and thus was never at the Insured Premises to be stolen. The defendants also wrongfully induced Hanover to make certain Insurance Claim payments through their collaborative fraudulent conduct. Accordingly, all coverages under the Brown/TME policy, the Mott policy and the Falls policy are voided, and Hanover is not obligated to make any further payments to Brown/TME, Mott or Falls associated with the theft/fire claim of November 5, 2015.

(e) Hanover has fully complied with all of its contractual obligations under the insurance policies and has further complied with all of its statutory duties set forth in TN Code Title 56.

WHEREFORE, Hanover American Insurance Company further prays for recovery of Insurance Claim payments and damages as follows:

(a)   Christopher C. Brown, individually and on behalf of Tattooed Millionaire Entertainment, LL. shall pay to Hanover the sum of $2,305,164.17 which represents insurance claim payments wrongly induced by Brown/TME though one or more unlawful and/or fraudulent insurance acts within the meaning of TN Code Title 56 Chapter 53.

(b)   Daniel R. Mott shall pay to Hanover the sum of $250,000.00 which represents insurance claim payments wrongly induced by Mott though one or more unlawful and/or fraudulent insurance acts within the meaning of TN Code Title 56 Chapter 53.

(c)   John Falls shall pay to Hanover the sum of $250,000 which represents insurance claim payments wrongly induced by Falls though one or more unlawful and/or fraudulent insurance acts within the meaning of TN Code Title 56 Chapter 53.

(d)   Christopher C. Brown, individually and on behalf of Tattooed Millionaire Entertainment, LLC., Daniel R. Mott, and John Falls shall further pay to Hanover all amounts representing damages in the form of investigation expenses, consultant fees, incidental claim expenses, insurance claim payments, attorneys' fees, court costs, and other damages to be shown at trial and other remedies, damages and penalties as may be allowed by law.

Respectfully submitted,

**DICKINSON WRIGHT PLLC**

BY: */s/ John E. Anderson, Sr.*
John E. Anderson, Sr., #13698
424 Church Street, Suite 1401
Nashville, Tennessee 37219
Telephone: (615) 244-6538
Facsimile:  (615) 256-8386
Email: janderson@dickinsonwright.com

Mark C. Dodart, La. Bar #17549
Application for Admission Pro Hac Vice Pending
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
Email:  mark.dodart@phelps.com

**ATTORNEYS FOR PLAINTIFF, HANOVER AMERICAN INSURANCE COMPANY**

NASHVILLE 38411-330 581759v1